The Chief Justice
delivered the opinion of the court.
In the year 1819, the Orphans’ Court of the county of Somerset, committed the guardianship of the person and property of David Voorhees, then tinder the age of fourteen years, upon the relinquishment and by the request of his mother, then a widow, to John D. W. Tenbrook. In June term, -1827, the court, on' the application of the mother and *113 her present husband, Henry McColm, made an order revoking the letters of guardianship “ so far as relates to the person of the said David Voorhees,” and ordering that the same be granted to the said Henry McColm and his wife. This order recites that it appeared to the court that ■" the custody of the person of the said infant *had until lately been committed by the said guardian to the mother of the said infant, and that the said mother was desirous of retaining the possession of the person of the said infant, and had always treated him with the kindness and affection of a mother, and was, together with her present husband, Henry McColm, perfectly competent to the proper bringing up of the said infant, and that the said John D. W. Ten Brook had, without good or proper cause shewn, taken the said ward from his mother, and refused to restore him.”
Ten Brook, the guardian, insists that this order of revo■cafion and appointment is erroneous and should be set aside.
According to the provisions and policy of our laws, the guardianship of the person and the estate of a minor is to be united; or speaking perhaps more correctly, he who is appointed guardian is charged with the care of both the person and the property of the ward.
The eighteenth section of the act of 1784, Patt. 63, whereby the Orphans’ Courts of this state were organized, by which section the subject of guardianship was regulated, manifestly contemplates such union, and that the trust of the guardian should extend to the orphans’ estate and person. Although the section does not expressly define the authority of the guardian, and does provide that the court may appoint one or more persons, yet it is clear that it contemplates, if more than one should be appointed, that the duties should' he exercised jointly, and by no means that a portion of them should be assigned exclusively to either. The 28th section of the act of 1820, Rev. Laws 784, now in force, and supplying the place of the section above cited, *114 does not in this respect in the slightest degree differ from it, although varying somewhat in phraseology and in some of its provisions.
The twenty-seventh section of the act of 1820, directs the form in which letters of guardianship shall be issued ; and they shew that the person appointed is to be constituted the “ guardian of the person and property ” of the minor.
The idea of parcelling out the guardianship and dividing its duties among several, I do not find recognized directly or indirectly in any act of the legislature.
From a separation of these duties, while very little benefit can *be anticipated, many inconveniences and considerable, increase of expense must necessarily follow. The policy of our laws has wisely designed to prevent such consequences.
From a careful review of the acts of the legislature on this subject and from a reference to the uniform and settled practice of the state, which is entitled to some respect, I am satisfied the Orphans’ Courts are not authorized to divide the guardianship of a minor and commit his property to one and his person to another.
Hence the order in question of partial revocation and partial appointment is, in my opinion, erroneous and ought to be set aside.
I do not deem it necessary to examine the questions raised and argued by the plaintiff’s counsel, whether the Orphans’ Court have power of revocation beyond the cases specified in the act of the* legislature; and if so, whether the power ■was, in the present instance, exercised, duly and with sound discretion.
Order quashed.